**UNITED STATES DISTRICT COURT**
**EASTREN DISTRICT OF LOUISIANA**

| | |
|---|---|
| M. CLAUDIA GAROFALO and THADDEUS HARDY, individually, and on behalf of all others similarly situated,<br>　　Plaintiffs,<br><br>v.<br><br>PERMOBIL, INC., MAX MOBILITY LLC, and UNITED SEATING AND MOBILITY, LLC D/B/A NUMOTION,<br>　　Defendants. | Case No.<br><br>Judge:<br><br>Magistrate:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs M. Claudia Garofalo and Thaddeus Hardy bring this class action on behalf of themselves and all others similarly situated against Defendants Permobil, Inc., Max Mobility LLC, and United Seating and Mobility, LLC d/b/a NuMotion. Plaintiffs allege the following upon personal knowledge as to themselves and as to all other matters upon information and belief.

### I.    INTRODUCTION

1.    This class action relates to Defendants' false, misleading, unfair, and deceptive sale of defective devices intended to control the speed of external motors added to manual wheelchairs.

2.    Plaintiffs and other class members are wheelchair users.

3.    Defendants manufacture or sell the SmartDrive MX2+ Power Assist Device ("SmartDrive").  The SmartDrive is a motor mounted to a manual wheelchair to provide additional propulsion.

1

4.      Defendants also manufacture or sell the SpeedControl Dial. The SpeedControl Dial is an electronic speed-control knob that is supposed to let wheelchair users increase or decrease the speed of SmartDrive with ease.

5.      Defendants sold the SpeedControl Dial in a package with the SmartDrive for thousands of dollars, and also sold the SpeedControl Dial itself for hundreds of dollars.

6.      Defendants charged a price premium for the SmartDrive and/or SpeedControl Dial by touting the unrivaled control the SpeedControl Dial affords wheelchair users to easily change speed without coming to a complete stop.

7.      Defendants' promotions were false and deceptive because the SpeedControl Dial did not work as advertised, warranted, and intended. To the contrary, the SpeedControl Dial was defectively designed, manufactured, and labeled. Due to these serious and undisclosed defects, the SpeedControl Dial did not work as advertised, warranted, and intended.

8.      For instance, sometimes, the SpeedControl Dial was totally unresponsive and would not turn on the SmartDrive at all. Other times, users were unable to control the speed of the SmartDrive with the SpeedControl Dial, leaving wheelchair users unable to slow down, speed up, or stop. The SpeedControl Dial was so defective that, at times, the SmartDrive would start without any user input, meaning a wheelchair user would be propelled forward at speed without any warning or control at all.

9.      These redhibitory defects in the SpeedControl Dial rendered them inherently flawed, defective, non-merchantable, unfit for ordinary and intended use, and unreasonably dangerous. The SpeedControl Dial was completely unaccompanied by adequate warnings about these defects.

2

10.    Defendants concealed these redhibitory defects from Plaintiffs and other class members until very recently. In August 2025, Defendants finally disclosed the inherent design and manufacturing defects for the SpeedControl Dial. Due to these serious and unreasonably dangerous defects, they also announced they would no longer sell the SpeedControl Dial.

11.    No one would have purchased the SpeedControl Dial (either alone or in conjunction with the SmartDrive) had they know of the defects at the time of purchase. Alternatively, no one would have purchased the SpeedControl Dial (either alone or in conjunction with the SmartDrive) at the same price or terms had the defects been disclosed at the time of purchase.

12.    Plaintiffs and other class members repeatedly experienced problems with the SpeedControl Dial. Plaintiffs, therefore, bring this action on behalf of themselves and a class of similarly situated persons for economic damages and injunctive relief, as well as a subclass for physical injuries, who purchased and/or used the SpeedControl Dial. Defendants' wrongful conduct collectively constitutes (i) redhibition and breach of implied warranty (Count I), (ii) breach of express warranty (Count II), (iii) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count III), (iv) design and manufacture defects, and failure to warn (Counts IV-VI), (v) fraudulent concealment/inducement (Count VII), (vi) unjust enrichment (Count VIII), (vii) violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. § 51:1401 *et seq.*, and other states' consumer protection statutes (Count IX), and (viii) negligence (Count X).

## II.    PARTIES

13.    Plaintiff M. Claudia Garofalo is a citizen and resident of Louisiana who purchased and used the SpeedControl Dial in Louisiana.

14.    Plaintiff Thaddeus Hardy is a citizen and resident of Louisiana who purchased and used SpeedControl Dial in Louisiana.

15.    Defendant Permobil, Inc. ("Permobil") is a Tennessee corporation with its principal place of business and headquarters at 300 Duke Drive, Lebanon, Tennessee, 37090, with a registered agent at: CT Corporation, 300 Montvue Road, Knoxville, TN 37919. At all relevant times, Permobil directly, or through its supervision or control of Max Mobility, designed, manufactured, distributed, labeled, marketed, and sold Speed Dials and other wheelchair-related products in Louisiana and elsewhere.

16.    Defendant Max Mobility LLC ("Max Mobility") is a Tennessee limited liability company with its principal place of business and headquarters at 300 Duke Drive, Lebanon, Tennessee, 37090, with a registered agent at: CT Corporation, 300 Montvue Road, Knoxville, TN 37919. On information and belief Max Mobility was acquired by Permobil in or about 2017 and Max Mobility's sole member is Permobil. At all relevant times, Max Mobility directly, or through the supervision or control over it exercised by Permobil, designed, manufactured, distributed, labeled, marketed, and sold Speed Dials and other wheelchair-related products in Louisiana and elsewhere.

17.    Defendant United Seating and Mobility, LLC d/b/a NuMotion ("NuMotion") is a Missouri limited liability company with its principal place of business and headquarters at 805 Brook Street, Suite 402, Rocky Hill, CT 06067, with a registered agent at: CT Corporation, 300 Montvue Road, Knoxville, TN 37919. On information and belief, NuMotion's sole member is private equity firm AEA Investors, with its principal place of business and headquarters in New York, and which acquired NuMotion in or about 2018. At all relevant times, NuMotion distributed, labeled, marketed and sold Speed Dials and other wheelchair-related products in Louisiana and elsewhere.

18.     The true names and/or capacities, whether individual, corporate, partnership, member, company, associate, governmental, or otherwise are unknown to Plaintiffs at this time, and therefore Plaintiffs reserve the right to amend their allegations upon information of true names and capacities of any Defendant or other unnamed party.

## III.    JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1331 and § 1367, as well as pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of costs and interest, exceeds the sum of $5 million in the aggregate. There are well over 100 members of the proposed class. Complete diversity exists between each Plaintiff and each Defendant.

20.     This Court has personal jurisdiction over each Defendant because each Defendant conducts substantial business in this District and in the State of Louisiana through their respective distribution, marketing, and ales of Speed Dials and other products in Louisiana. In addition, Plaintiff and other class members have suffered injury as a result of each Defendant's conduct in this District.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District, each Defendant does business in this District, and each Plaintiff resides in this District.

## IV.    FACTUAL BACKGROUND

### A. Product Overview – The SpeedControl Dial and SmartDrive

22.     The SpeedControl Dial is intended to be used in conjunction with Permobil's and Max Mobility's SmartDrive MX2+ Power Assist Device ("SmartDrive").

23.    The SmartDrive is a motorized device that is attached to a manual wheelchair to provide additional propulsion. Here is an example of a SmartDrive:



24.    Here is an example of where a SmartDrive might look like when attached to a manual wheelchair:



25.     Here is an example of the SpeedControl Dial intended to be used in conjunction with the SmartDrive:



26.    The SpeedControl Dial is mounted within arm's reach of a user of a manual wheelchair. It essentially is a knob that allows a wheelchair user to electronically control the SmartDrive. By turning the SpeedControl Dial, the user can increase or decrease speed. Here is an example of how a SpeedControl Dial might be mounted on a manual wheelchair:



27.     The SmartDrive and the SpeedControl Dial are expensive. A SmartDrive with a SpeedControl Dial costs approximately $7,529.00. The SpeedControl Dial itself costs approximately $230.

28.     The SmartDrive and SpeedControl Dial sold at a price premium as compared to alternative products. Permobil and Max Mobility acknowledged: "When it comes to SmartDrive, often times, the least costly alternative ends up being a Group 2 power wheelchair." A "Group 2 power wheelchair" can cost thousands of dollars less than a SmartDrive and SpeedControl Dial.

29.     Permobil and Max Mobility justified the price premium for the SmartDrive and SpeedControl Dial with the allure of heightened control and flexibility offered by the SmartDrive when used in conjunction with the SpeedControl Dial.

30.     Permobil and Max Mobility stressed the value-proposition of the SpeedControl Dial. They claim the dial allows a wheelchair user to increase or decrease speed on the go. This is a substantial benefit that consumers recognize. For instance, Permobil and Max Mobility also sell

another speed control device for the SmartDrive, known as the SwitchControl Button ("SwitchControl"). Unlike the variable speed functionality advertised for the SpeedControl Dial, the SwitchControl does not allow a user to change speed without stopping. This underscores that a top feature of the SpeedControl Dial, as expressly advertised by Permobil and Max Mobility, was the purported ability to easily increase or decrease speed without stopping.

31.    Permobil and Max Mobility know consumers are very interested in the advertised capabilities of the SpeedControl Dial, and reinforced those capabilities in their marketing, sales, and other materials.

32.    For instance, Permobil and Max Mobility stated that "SmartDrive provides manual wheelchair users more control over their experience than ever before" in conjunction with the SpeedControl Dial. According to Permobil and Max Mobility, this includes enhanced experiences "Navigating through uneven surfaces, including carpets and rugs," "Opening doors," "Housekeping," "Taking care of family and pets," "Going up ramps and up to 17% inclines" "Navigating crowds by easily adjusting speeds," and "Traveling long distances with minimal effort." As Permobil and Max Mobility put it, the SpeedControl Dial allows someone to "[e]asily start, stop and change speeds on the go."

33.    Permobil and Max Mobility also touted the SmartDrive and SpeedControl Dial as collectively providing "smooth, lightweight power assist" that "makes a big impact" whether a wheelchair user is "spinning in place, doing a wheelie, or hopping curbs." They further represented the SmartDrive used in conjunction with the SpeedControl Dial is "built for your lifestyle" and offers "more freedom and less effort" for wheelchair users.

34.    Permobil and Max Mobility said the SpeedControl Dial in particular "brings next-level control and intuitiveness to SmartDrive." Among the many advertised benefits, Permobil and

10

Max Mobility stressed the ease and usefulness of the SpeedControl Dial: "Users are now able to start, stop, and adjust their speeds by simply rotating the dial forwards or backwards." Permobil and Max Mobility stressed that, with the SpeedControl Dial, the "SmartDrive provides manual wheelchair users more control over their experiences than ever before."

35.    Similarly, Permobil and Max Mobility claimed that the SpeedControl Dial lets you "Start, stop, and change your speed on-the-go," and is a "new and improved" control option that makes it "easier than ever to achieve fewer pushes."

36.    NuMotion is a medical device supply company that distributed and sold the SmartDrive and the SpeedControl Dial.

37.    NuMotion's promotional statements echoed those of Permobil and Max Mobility.

38.    For instance, NuMotion touted the SmartDrive with the SpeedControl Dial as "a great option if you don't quite need a power wheelchair, but could use the occasional support from a power source to go the distance needed."

39.    NuMotion described the SmartDrive and SpeedControl Dial as a power assist add-on to manual wheelchairs which "help[s] you navigate hills, long distances, and daily life with greater ease, without giving up the freedom of your manual chair." Other touted benefits included "Having a part-time power source can combat fatigue when you're pushing to get around," and "giv[ing] your body a helpful assist or a complete break when needed."

### B.    The SpeedControl Dial's Hidden Defects

40.    By December 2024 at the latest, Permobil and Max Mobility were aware of troubling reports about malfunctioning SpeedControl Dials and defects therein. The malfunctions included the SpeedControl Dial being non-responsive or sluggish. More troublingly, the malfunctions included the SmartDrive activating even when the SpeedControl Dial was in the off

11

position, resulting in unintended acceleration. Just as troubling were reported malfunctions involving the SpeedControl Dial not responding to a user's attempt to slow or turn-off the SmartDrive, resulting in continued propulsion at unwanted speeds.

41.     The unfortunate result of the undisclosed defects in the SpeedControl Dial meant, at best, that wheelchair users could not properly and fully enjoy the purported control offered by the SpeedControl Dial. At worst, it meant wheelchair users were experiencing or were at risk of experiencing crashes because a SpeedControl Dial would start a SmartDrive without user input, or would not respond when a user tried to slow down or stop.

42.     On December 20, 2024, Permobil and Max Mobility purportedly initiated a non-public nationwide Class I recall of a subset SpeedControl Dials manufactured between August 2023 and November 2024. At that time, Permobil and Max Mobility cited "a material change with the printed circuit board assembly" for the reported malfunctions.

43.     Permobil and Max Mobility did not publicly announce this limited recall until January 14, 2025. At this time in January 2025, Permobil and Max Mobility again cited an issue with the circuit board, and admitted that the defect posed "potential safety and performance concerns."

44.     Among the malfunctions disclosed at this time were: "Continued drive: The Speed Control Dial does not fully stop the drive unit when rotated to the zero position. Involuntary movement: Unintended activation of the SmartDrive motor without intentional user input while the Speed Control Dial is at the zero position and the dial light is flashing in standby mode. Loss of power: When the Speed Control Dial is rotated forward from the zero position, SmartDrive motor movement is initiated, and then the Speed Control Dial unexpectedly shuts down. Failure

to start driving: When the dial is rotated forward from the zero position, no SmartDrive motor activation occurs."

45.    Permobil and Max Mobility further conceded at this time that the defect "could result in the SmartDrive motor continuing to run, unexpectedly initiating movement, or stopping unexpectedly. Depending on the scenario, this could lead to minor and/or serious injuries."

46.    Permobil and Max Mobility also revealed at this time in January 2025 that that they had received a staggeringly high 646 complaints associated with the SpeedControl Dial, including reports of serious injuries such as a fractured hip, a fractured tibia, and a fractured malleolus bone.

47.    On April 7, 2025, Permobil and Max Mobility publicly announced a nationwide expansion of the recall to include SpeedControl Dials that were manufactured during a wider timeframe than before. This time, the recall was for devices made between August 2023 and March 2025.  Permobil and Max Mobility also disclosed 781 complaints associated with the circuit board design for the SpeedControl Dial, up from 676 just a few months earlier.

48.    Finally, on August 12, 2025, Permobil and Max Mobility announced a worldwide expanded recall of SpeedControl Dials, as well as the removal of all SpeedControl Dials from the market.

49.    The August 2025 recall and removal of the SpeedControl Dial from the market was for *another* defect besides the circuit board manufacturing defect identified in January. Permobil and Max Mobility revealed for the first time in August 2025 that they had "identified a design issue with the SpeedControl Dial that may lead to unexpected behavior of the SmartDrive MX2+ motor. This design issue has been part of the SpeedControl Dial since it was first introduced to the market in April 2022 and impacts all SpeedControl Dials manufactured and distributed, which occurred between April 25, 2022 to July 08, 2025."

50.    They further elaborated that this "design issue" results in an "intermittent electrical connection between the SpeedControl Dial and SmartDrive." Consequently, wheelchair users can experience "continued drive" (i.e., the SpeedControl Dial fails to stop the SmartDrive's propulsion), and "involuntary movement" (i.e., unintended activation of the SmartDrive "without intentional user input to the SpeedControl Dial while the dial is at the zero position").

51.    Permobil and Max Mobility announced at this time that they had identified 54 complaints associated with this issue, including at least two serious injuries related to bone fractures. This was in addition to the hundreds of complaints referenced a few months earlier.

52.    Permobil and Max Mobility advised wheelchair users in August 2025 to "[i]mmediately discontinue use of the SpeedControl dial to reduce the likelihood of a potentially hazardous or harmful situation."

53.    At no time did Permobil and Max Mobility provide adequate warning to actual or potential users of the SpeedControl Dial about the unreasonably dangerous defects.

54.    In short, as of August 2025, Permobil and Max Mobility had completely stopped selling the SpeedControl Dials due to inherent defects, and advised all consumers to immediately stop using the SpeedControl Dial because they did not work and could result in serious injury. Around this same time, NuMotion also advised consumers for the first time to stop using the SpeedControl Dial for the same reasons, and stopped selling the dials as well.

### C.  **Plaintiffs' Experiences**

55.    Plaintiff Garofalo is a wheelchair user. In or about summer 2017, late fall 2022, and summer 2023, among other times, Plaintiff Garofalo reviewed Permobil's and Max Mobility's website about the SmartDrive and/or SpeedControl Dial. She also reviewed NuMotion's website

about the SmartDrive and/or SpeedControl Dial.  None of the materials Plaintiff Garofalo reviewed disclosed the flawed and defective nature of the SpeedControl Dial.

56.    In reliance on the foregoing, Plaintiff Garofalo purchased a SmartDrive and/or SpeedControl Dial in or about summer 2017, late fall 2022, and summer 2023 through NuMotion. She reviewed the packaging, labeling, and instructions that came with the purchase, none of which disclosed the flawed and defective nature of the SpeedControl Dial.

57.    Plaintiff Garofalo experienced repeated problems with the SpeedControl Dial. For instance, at times the SpeedControl Dial would be unresponsive and not increase or decrease the speed of his SmartDrive. At other times, the SmartDrive would inexplicably stop or start without Plaintiff Garofalo's touching the SpeedControl Dial. She has purchased replacement SpeedControl Dials at least two or three times due to repeated problems. Each time, she experienced the same or similar problems.

58.    For instance, the SpeedControl Dial malfunctioned in October 2024 while Plaintiff Garofalo was on a trip in Italy. She had to purchase a replacement dial while on her trip because the dial was defective and did not work as intended. Thereafter, she continued to experience problems with the SpeedControl Dial.

59.    The SpeedControl Dial malfunctions caused Plaintiff Garofalo inconvenience and harm. Multiple times, the defects in the SpeedControl Dial resulted in her inability to properly control the SmartDrive, resulting in her suffering physical impact to her person. For example, one time, while using the SmartDrive and SpeedControl Dial, she attempted to slow the SmartDrive and bring her wheelchair to a stop. The SpeedControl Dial did not respond to her command, resulting in the SmartDrive hurtling her forward and throwing her out of her chair. She suffered serious physical injuries as a result, including a fractured pelvis.

60.     Plaintiff Garofalo would not have purchased the SmartDrive and/or SpeedControl Dial had the materials she reviewed disclosed the true nature of the SpeedControl Dial. Alternatively, Plaintiff Garofalo would have paid less for the SmartDrive and/or SpeedControl Dial. Plaintiff Garofalo reasonably understood the marketing, packaging, labeling, and accompanying information for the SpeedControl Dial meant or implied the SpeedControl Dial was safe, effective, useful, merchantable, fit for ordinary and intended purposes, and did not carry any undisclosed flaws or defects.

61.     Making matters worse, Permobil, Max Mobility, and NuMotion did not disclose information that would have allowed Plaintiff Garofalo to repair the SpeedControl Dial.

62.     Plaintiff Hardy is a wheelchair user. In or about 2020 or 2021, as well as in or about 2023, among other times, Plaintiff Hardy reviewed Permobil's and Max Mobility's website about the SmartDrive and/or SpeedControl Dial. He also reviewed NuMotion's website about the SmartDrive and/or SpeedControl Dial.  None of the materials Plaintiff Hardy reviewed disclosed the flawed and defective nature of the SpeedControl Dial.

63.     In reliance on the foregoing, Plaintiff Hardy purchased a SmartDrive and/or SpeedControl Dial  in or about 2020 or 2021, and SpeedControl Dial in or about 2023 through NuMotion. He reviewed the packaging, labeling, and instructions that came with his purchase, none of which disclosed the flawed and defective nature of the SpeedControl Dial.

64.     Plaintiff Hardy experienced repeated problems with the SpeedControl Dial. For instance, at times the SpeedControl Dial would be unresponsive and not increase or decrease the speed of his SmartDrive. At other times, the SmartDrive would inexplicably stop or start without Plaintiff Hardy's touching the SpeedControl Dial. He believes he purchased at least one

16

replacement SpeedControl Dial due to repeated problems. Each time, he experienced the same or similar problems.

65.     For instance, the SpeedControl Dial malfunctioned in the last year while Plaintiff Hardy was on a trip to North Carolina. The SpeedControl Dial malfunctioned during an outdoor excursion, resulting in Plaintiff Hardy's running into a tree, suffering minor physical harm, and becoming stuck. He had to be carted down from the mountains because of the SpeedControl Dial malfunction.

66.     The SpeedControl Dial malfunctions caused Plaintiff Hardy inconvenience and harm. For instance, in 2024 and 2025, and earlier, Plaintiff repeatedly experienced problems with the SpeedControl Dial that resulted in his running into walls and objects, causing physical impact and harm to his person.

67.     Plaintiff Hardy would not have purchased the SmartDrive and/or SpeedControl Dial had the materials he reviewed disclosed the true nature of the SpeedControl Dial. Alternatively, Plaintiff Hardy would have paid less for the SmartDrive and/or SpeedControl Dial. Plaintiff Hardy reasonably understood the marketing, packaging, and accompanying information for the SpeedControl Dial meant or implied the SpeedControl Dial was safe, effective, useful, merchantable, fit for ordinary and intended purposes, and did not carry any undisclosed flaws or defects.

68.     Making matters worse, Permobil, Max Mobility, and NuMotion did not disclose information that would have allowed Plaintiff Hardy to attempt to repair the SpeedControl Dial.

17

### D. Fraudulent Concealment and Tolling

69.    Plaintiffs' and other class members' causes of action accrued no earlier than August 2025, the date Permobil and Max Mobility, and in turn NuMotion, announced a worldwide expanded recall and removal of all SpeedControl Dials from the market.

70.    Each Plaintiff exercised reasonable diligence but could not discover the SpeedControl Dials' defects because Defendants' wrongful acts were concealed from Plaintiffs, other class members, and the public.  Facts pertinent to same were exclusively within Defendants' possession and control, including the nature of the design and manufacture of the SpeedControl Dial.

71.    Alternatively, any statute of limitation or prescriptive period is equitably tolled because of fraudulent concealment. Each Defendant affirmatively concealed from Plaintiffs and other class members their respective unlawful conduct.

72.    Each Defendant affirmatively strove to avoid disclosing its knowledge of the defects and the current Good Manufacturing Practices ("cGMP") violations that resulted in same. For instance, Defendants did not reveal to the public that the SpeedControl Dials had a design defect that resulted in intermittent electrical connections, and manufacturing defects as to those connections as well as to the printed circuit boards. To the contrary, each Defendant continued to represent and warrant that the SpeedControl Dial was safe, useful, merchantable, fit for intended and ordinary purposes, and free of redhibitory defects, when this was not the case.

73.    Because of this, Plaintiffs and other class members did not discover, nor could  they have discovered through reasonable and ordinary diligence which was exercised, each Defendant's deceptive, fraudulent, and unlawful conduct alleged herein. Each Defendant's false and misleading explanations, or obfuscations lulled Plaintiffs and other class members into believing that they

18

were purchasing and using defect-free SpeedControl Dials despite their exercise of reasonable and ordinary diligence.

74.     As a result of each Defendant's affirmative and other acts of concealment, any applicable statute of limitation or prescriptive period affecting the rights of Plaintiffs and other class members has been tolled. Plaintiffs and other class members exercised reasonable diligence by, among other things, promptly investigating and bringing the allegations contained herein. Despite these or other efforts, Plaintiffs were unable to discover, and could not have discovered, the unlawful conduct alleged herein at the time it occurred or at an earlier time so as to enable any complaint to be filed sooner.

## V.     CLASS ALLEGATIONS

75.     Plaintiffs bring this action both individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) against Permobil, Max Mobility, and NuMotion on their own behalf and on behalf of the below class and subclasses (collectively, "the Class"):

> **The SpeedControl Dial Class:** All persons who purchased and/or used a SpeedControl Dial between at least April 2022 and the present.

> With two subclasses:

> **The NuMotion Subclass:** All persons who purchased and/or used a SpeedControl Dial through NuMotion between at least April 2022 and the present.

> **The Physical Injury Subclass:** All persons who suffered physical injury due to use of the SpeedControl Dial between at least April 2022 and the present.

76.     Excluded from the Class are (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendants and each of their employees, officers, directors, and agents; (c) Defendants' legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

19

77.     Plaintiffs reserve the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

78.     Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

79.     **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially hundreds if not thousands of persons. The Class is therefore so numerous that joinder of all members is impracticable.

80.     **Commonality**:  Common questions of law and fact exist as to all class members, including but not limited to:

a.   Whether Permobil and Max Mobility defectively designed the SpeedControl Dial;

b.   Whether Permobil and Max Mobility defectively manufactured the SpeedControl Dial;

c.   Whether Permobil and Max Mobility provided inadequate warnings with the SpeedControl Dial;

d.   The nature of any redhibitory defect or other flaw or defect for the SpeedControl Dial;

e.   Whether Permobil, Max Mobility, and/or NuMotion affirmatively, misleadingly, deceptively, unfairly, or illegally misrepresented the safety profile and risks for the SpeedControl Dial;

f.   Whether Permobil, Max Mobility, and/or NuMotion materially omitted material facts about the design, manufacture, safety, and use of the SpeedControl Dial;

g.   Whether Permobil, Max Mobility, and/or NuMotion had an obligation to market and sell the SpeedControl Dial without misrepresenting or omitting material facts about the design, manufacture, safety, and use of the SpeedControl Dial;

20

h. Whether Permobil's, Max Mobility's, and/or NuMotion's misrepresentations or omissions would be material to a reasonable consumer;

i. Whether NuMotion was unjustly enriched by receiving monies for the SpeedControl Dial;

j. Whether the challenged practices harmed Plaintiffs and other class members;

k. Whether Plaintiffs and other class members are entitled to damages, restitution, equitable relief, declaratory relief, and/or injunctive relief, and the nature thereof.

81. **Typicality**: Plaintiffs' claims are typical of other class members' claims. Plaintiffs and other class members all suffered the same type of harm. Plaintiffs have substantially the same interest in this matter as all other class members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all other class members.

82. **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in class actions, consumer litigation, medical drug and device litigation, personal injury claims, civil rights litigation, and federal court litigation. Accordingly, Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of other class members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiffs have no disabling conflicts with other class members and will fairly and adequately represent the interests of class members.

83. The elements of Rule 23(b)(2) are met. Each Defendant has acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole, and the Class is a cohesive group.

84. The requirements of Rule 23(b)(3) are met. The common questions of law and fact

21

enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  Although many other class members have claims against each Defendant, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' experienced counsel foresee little difficulty in the management of this case as a class action.

## VI.    CAUSES OF ACTION

**Count I – Redhibition/Breach of Implied Warranty (Against All Defendants)**

85.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

86.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

87.    Each Defendant – Permobil, Max Mobility, and NuMotion – represented and advertised that the SpeedControl Dial was safe, useful, usable as represented and advertised, merchantable, fit for intended and ordinary purposes, and did not contain any undisclosed risks or defects.

88.    Each Defendant – Permobil, Max Mobility, and NuMotion – made these misrepresentations, or omitted material information, in their respective marketing, advertising, websites, packaging, labeling, and instructions for the SpeedControl Dial.

89.    Each Defendant – Permobil, Max Mobility, and NuMotion – manufactured or sold SpeedControl Dial that were expressly and impliedly warranted as safe and non-defective.

22

90.     Contrary to each Defendant's representations or omissions, the SpeedControl Dial contained redhibitory defects that rendered the dial unsafe, unusable, defective, non-merchantable, not fit for ordinary or intended purposes, and/or so inconvenient that it must be supposed that no one would have purchased the SpeedControl Dial had they known of the defects.

91.     The redhibitory defects in the SpeedControl Dial existed at the time each Plaintiff of other class member purchased the SpeedControl Dial.

92.     Each Defendant – Permobil, Max Mobility, and NuMotion – knew, and certainly should have known, of the redhibitory defects. Yet, each Defendant concealed the defects and did not disclose them to Plaintiffs or other class members, none of whom could have discovered the defects through reasonable diligence.

93.     Each Defendant – Permobil, Max Mobility, and NuMotion – was given notice and opportunity to remedy as to each Plaintiff and the class they seek to represent. Among other things, Plaintiffs sent pre-suit notice and demand letters to each Defendant prior to filing this action. Each Defendant failed to respond.

94.     Each Defendant – Permobil, Max Mobility, and NuMotion – breached their warranties that the SpeedControl Dial were free of redhibitory defects. The Speed Dial was not as promised because the actual use and safety profile was not the same as represented, warranted, and bargained for.

95.     Plaintiffs and other class members would not have purchased the SpeedControl Dial had they known they carried undisclosed risks or redhibitory defects. Alternatively, they would not have purchased the SpeedControl Dial on the same terms, and/or would have paid substantially less for them.

96.     Plaintiffs and other class members received direct statements from each Defendant

about the safety and use of the SpeedControl Dial. Plaintiffs and other class members were intended third-party beneficiaries to the extent any Defendant made a representation, omission, or warranty to a reseller who in turn resold the Speed Dials to consumers.

97.    As a direct and proximate result of each Defendant's sale of the SpeedControl Dial with unbargained for redhibitory defects, Plaintiffs and other class members each were injured and suffered economic damages (including but not limited to, alternatively, the purchase prices of the SpeedControl Dial, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a substitute) and consequential economic damages in that the SpeedControl Dial was so inherently flawed, defective, unfit, or unmerchantable as to have had no market value or substantially less market value. Plaintiffs and other class members suffered injury and damage arising from a reasonably anticipated use of the SpeedControl Dial. Alternatively and/or in addition to economic damages, a subset of class members including Plaintiffs also have been injured and sustained pain, suffering, impairment, loss of enjoyment of life, and other related noneconomic damages as a direct and proximate result of each Defendant's breach of warranty concerning the unreasonably dangerous characteristics of the SpeedControl Dial.

**Count II – Breach of Express Warranty (Against All Defendants)**

98.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

99.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

100.    Each Defendant – Permobil, Max Mobility, and NuMotion – expressly represented and advertised that the SpeedControl Dial was safe, useful, usable as represented and advertised, merchantable, fit for intended and ordinary purposes, and did not contain any undisclosed risks or

24

defects.

101.    Each Defendant – Permobil, Max Mobility, and NuMotion – made these misrepresentations, or omitted material information, in their respective marketing, advertising, websites, packaging, labeling, and instructions for the SpeedControl Dial.

102.    Each Defendant – Permobil, Max Mobility, and NuMotion – manufactured or sold SpeedControl Dial that were expressly and impliedly warranted as safe and non-defective.

103.    For example, Permobil and Max Mobility's  own standardized user manual, which "must be given to the user of this product," expressly represented that the SpeedControl Dial "can be used to deactivate the motor [in the SmartDrive], as well as provide a means of actively powering the motor [in the SmartDrive]."

104.    Permobil and Max Mobility also explicitly stated that the SpeedControl Dial "brings next-level control and intuitiveness to SmartDrive." Among the many advertised benefits, Permobil and Max Mobility stressed the ease and usefulness of the Speed Control Dial: "Users are now able to start, stop, and adjust their speeds by simply rotating the dial forwards or backwards." Permobil and Max Mobility stressed that, with the SpeedControl Dial, the "SmartDrive provides manual wheelchair users more control over their experiences than ever before."

105.    Permobil and Max Mobility further claimed that the SpeedControl Dial lets you "Start, stop, and change your speed on-the-go," and is a "new and improved" control option that makes it "easier than ever to achieve fewer pushes."

106.    Similarly, NuMotion expressly stated that the SmartDrive with the SpeedControl Dial is "a great option" that "help[s] you navigate hills, long distances, and daily life with greater ease, without giving up the freedom of your manual chair."

107.    Permobil's, Max Mobility's, and NuMotion's express affirmations and statements,

25

which formed the benefit of the bargain, were untrue. Contrary to providing the explicitly stated ability to seamlessly control speeds, the SpeedControl Dial was inherently flawed and defective and did not work as represented.

108. Contrary to each Defendant's representations or omissions, the SpeedControl Dial contained flaws or defects that rendered the product unsafe, unusable, defective, non-merchantable, not fit for ordinary or intended purposes, and/or so inconvenient that it must be supposed that no one would have purchased the SpeedControl Dial had they known of the defects.

109. The flaws or defects in the SpeedControl Dial rendered the product unreasonably dangerous. The inability to control the SmartDrive properly and as warranted meant basic movement could not be controlled and users can and did experience the inability to move when they wanted to, and the inability to slowdown or stop when they wanted to.

110. The flaws or defects in the SpeedControl Dial existed at the time each Plaintiff of other class member purchased the Speed Dials.

111. Each Defendant – Permobil, Max Mobility, and NuMotion – knew, and certainly should have known, of the flaws or defects in the SpeedControl Dial. Yet, each Defendant concealed the defects and did not disclose them to Plaintiffs or other class members, none of whom could have discovered the defects through reasonably diligence.

112. Each Defendant – Permobil, Max Mobility, and NuMotion – was given notice and opportunity to remedy as to each Plaintiff and the class they seek to represent. Among other things, Plaintiffs sent pre-suit notice and demand letters to each Defendant prior to filing this action. Each Defendant failed to respond.

113. Each Defendant – Permobil, Max Mobility, and NuMotion – breached their warranties that the SpeedControl Dial was free of defects. The SpeedControl Dial was not as

26

promised because the actual use and safety profile was not the same as represented, warranted, and bargained for.

114.    Plaintiffs and other class members were induced by each Defendant's representations or omissions, and would not have purchased the SpeedControl Dial had they known they carried undisclosed risks or defects. Alternatively, they would not have purchased the SpeedControl Dial on the same terms, and/or would have paid substantially less for them.

115.    Plaintiffs and other class members received direct statements from each Defendant about the safety and use of the SpeedControl Dial. Plaintiffs and other class members were intended third-party beneficiaries to the extent any Defendant made a representation, omission, or warranty to a reseller who in turn resold the SpeedControl Dial to consumers.

116.    As a direct and proximate results of each Defendant's sale of the SpeedControl Dial with unbargained for defects, Plaintiffs and other class members each were injured and suffered economic damages (including but not limited to, alternatively, the purchase prices of the Speed Dials, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a substitute) and consequential economic damages in that the SpeedControl Dial was so inherently flawed, defective, unfit, or unmerchantable has to have had no market value or substantially less market value. Plaintiffs and other class members suffered injury and damage arising from a reasonably anticipated use of the SpeedControl Dial. Alternatively and/or in addition to economic damages, a subset of class members including Plaintiffs also have been injured and sustained pain, suffering, impairment, loss of enjoyment of life, and other related noneconomic damages as a direct and proximate result of each Defendant's breach of warranty concerning the unreasonably dangerous characteristics of the SpeedControl Dial.

**Count III – Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Against All Defendants)**

117.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

118.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members.

119.    Each Defendant – Permobil, Max Mobility, and NuMotion – is a "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

120.    Plaintiffs and other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act.

121.    Each Defendant – Permobil, Max Mobility, and NuMotion  Defendant expressly or impliedly warranted the SpeedControl Dial as described in Counts I and II.

122.    Under 15 U.S.C. § 2310(d)(1), Plaintiffs and other class members were "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Plaintiffs sue pursuant to this section to recover money damages and for legal and equitable relief on behalf of themselves and the Class.

123.    Each Defendant – Permobil, Max Mobility, and NuMotion – was given notice and opportunity to remedy as to each Plaintiff and the class they seek to represent. Among other things, Plaintiffs sent pre-suit notice and demand letters to each Defendant prior to filing this action. Each Defendant failed to respond.

124.    Pursuant to 15 U.S.C. § 2310(d)(2), upon prevailing in this action, Plaintiffs are entitled to receive an award of attorneys' fees and expenses and pray for the same.

**Count IV – Design Defect (Against Permobil and Max Mobility)**

125.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

126.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

127.    Permobil and Max Mobility designed, manufactured, tested, marketed, sold, and distributed the SpeedControl Dial purchased and used by Plaintiffs and other class members. These acts were under the ultimate control and supervision of Permobil and Max Mobility.

128.    Permobil's and Max Mobility's SpeedControl Dial were unreasonably dangerous in design for reasonably anticipated use by consumers, including Plaintiffs and other class members.

129.    Permobil's and Max Mobility's SpeedControl Dial was defective in design in that, when placed into the stream of commerce by Permobil and Max Mobility, the foreseeable risks exceeded the alleged benefits associated with the design.

130.    The SpeedControl Dial was expected to and did reach Plaintiffs and other class members without substantial change in their condition as manufactured, designed, handled, distributed, and sold by Permobil and Max Mobility.

131.    The SpeedControl Dial was defective in manufacture, construction, or composition in that Permobil and Max Mobility materially deviated from their manufacturing specifications, performance standards, testing, or quality assurance such that the manufacture or design posed an unreasonable risk of harm to Plaintiffs and other class members.

132.    Permobil and Max Mobility knew, and certainly should have known, that the SpeedControl Dial was defective, inherently flawed, inherently dangerous, and unsafe when used in the manner intended or instructed by Permobil and Max Mobility.

133. Permobil and Max Mobility knew, and certainly should have known, that the defective design of the SpeedControl Dial could result in physical and other injuries.

134. Permobil and Max Mobility did not conduct adequate post-marketing surveillance of the SpeedControl Dial.

135. Permobil and Max Mobility could have employed safer alternative designs for the SpeedControl Dial, which did exist. For example, Permobil and Max Mobility could have designed the SpeedControl Dial to avoid the unwanted acceleration or non-responsiveness that Plaintiffs and other class members experienced when using the SpeedControl Dial.

136. Given the nature of the defective design of the SpeedControl Dial, it was likely and reasonably anticipated that the SpeedControl Dial would cause damages to Plaintiffs and other class members and the gravity of such damages outweighed the burden of adopting an alternative design and the adverse effect of such alternative design on the utility of the SpeedControl Dial.

137. Plaintiffs and other class members used the SpeedControl Dial in an intended or reasonably foreseeable manner without knowledge of the dangerous characteristics.

138. The SpeedControl Dial was more dangerous than alternative products, and Permobil and Max Mobility could have designed the SpeedControl Dial to avoid harm to Plaintiffs and other class members. The state of industry knowledge at the time Permobil and Max Mobility designed the SpeedControl Dial was such that a less risky design was feasible.

139. At the time the SpeedControl Dial left Permobil's and Max Mobility's control, there was a practical, technically feasible, and safer alternative design that would have prevented harm without substantially impairing the reasonably anticipated or intended function for the Speed Dials.

140. For example, Permobil and Max Mobility could have feasibly designed the SpeedControl Dial circuit board assembly to ensure solder joints on the assembly were made with

30

sufficient solder material heated at a sufficient temperature to ensure the joints were not too thin or underheated. Absent sufficient solder material or soldering temperature, the joints could result and did result in weak electrical connection. The joints also were prone to and did crack, resulting in an interruption of electric signal.

141. Additionally, Permobil and Max Mobility could have feasible designed the SpeedControl Dial circuit board assembly to ensure the board itself did not become stressed or cracked, such as by increasing thickness or density of the board and/or by adding lifting pads to minimize the impact of physical stress on the board.

142. Permobil and Max Mobility could have feasibly designed the assembly to ensure components were not too close together, to avoid the components from creating a short circuit or intermittent electrical concern.

143. Two other very high percentage failure modes variable control systems such as the SpeedControl Dial are the quality and specifications of the potentiometer and the ruggedness of the connectors.

144. Potentiometers for this application can range from a few dollars to thousands of dollars and the quality and performance specifications are commensurate with those costs. The quality of the fixed element and the number of moveable wipers will determine the fidelity of the linearity and the ability to remain within specification over time and wear. The firmware/software, or even analog logic is designed and tuned to new part specifications. As the wearable components work over time, those original specifications may well be out of tolerance for the system functionality. This phenomena develops over time and causes intermittent performance and malfunction. Additionally, the sanctity of the environmental seals vary widely. If discretionary diligence is not accounted for in the component selection, an inferior seal may be put into service

in a high contamination environment. This is a typical defect caused by a poor component selection, and could have been avoided here.

145.    Mechanical mobile applications also suffer from varying and dynamic vibrations. If the environmental seals are deficient or if the electromechanical contacts are not robust, fretting will occur. The fretting will cause the electrical signals to fluctuate with respect to voltage and can introduce unwanted frequencies. This inappropriate component selection is also a defect that will cause machine performance degradation and uncommanded deviations, and could have been avoided here.

146.    Permobil's and Max Mobility's quality control, investigative, and monitoring practices also highlight the defective design and manufacture. Permobil and Max Mobility received numerous complaints about the defective SpeedControl Dial and declined to properly investigate and submit them to the FDA, as required by current Good Manufacturing Practices ("cGMP") regulations including but not limited to 21 C.F.R. §§ 803.1, 803.10(c), 803.50, 803.52, 803.53, 803.56, 814.3a(d), 814.80, 814.81, 814.82, 814.84 as well as 21 U.S.C. § 360i (Medical Device Amendment to the Food, Drug & Cosmetic Act).

147.    Furthermore, Permobil and Max Mobility failed to report adverse event reports within 30 days, *see* 21 C.F.R. § 803.10(c)(1), or those for which remedial action was required within five days, *see* 21 C.F.R. § 803.10(c)(2). Moreover, Permobil and Max Mobility, due to inadequate procedures and willful desire to avoid reporting adverse consequences, failed to designate serious events for timely remediation.

148.    Permobil's and Max Mobility's actions also fell below the floor established by the FDA. However, the state of Louisiana and other states' laws impose identical, non-conflicting obligations and requirements on Permobil and Max Mobility to properly design, manufacture, test,

monitor, and report adverse events. These parallel state law obligations were breached by Permobil's and Max Mobility's defective design of the SpeedControl Dials for the reasons alleged above. Permobil's and Max Mobility's actions also fell below the floor established by the FDA.

149. Plaintiffs reference federal law herein not in any attempt to enforce it, but to demonstrate that their state-law tort claims do not impose any additional obligations on any Defendant, beyond what was already required of them under federal law.

150. On information and belief, Permobil and Max Mobility never sought nor received premarket approval from the FDA for either the SmartDrive or the SpeedControl Dial.

151. The likelihood that Permobil's and Max Mobility's design would cause Plaintiffs' and other class members' injuries and damages and the gravity of those injuries and damages outweighed the burden on Permobil and Max Mobility to adopt the feasible alternative design and the adverse effect, if any, of such alternative design on the utility of the SpeedControl Dial. This is because the cost and burden of the alternative design were minimal to zero, and would largely diminish or extinguish the unreasonable risk of the defective design.

152. Permobil's and Max Mobility's Speed Dials were defective in design in that, when placed into the stream of commerce by Permobil and Max Mobility, the foreseeable risks exceeded the alleged benefits associated the design.

153. Permobil and Max Mobility intentionally and recklessly defectively designed the SpeedControl Dial with wanton and willful disregard for the rights and safety of Plaintiffs and other class members, and with malice, placing their economic interests above the rights and safety of Plaintiffs and other class members.

154. The defective design of the SpeedControl Dial was a substantial factor in injuries sustained by Plaintiffs and other class members.

155. The defective design of the SpeedControl Dial caused or contributed to Plaintiffs' and other class members' injuries.

156. As a direct and proximate results of each Defendant's sale of the SpeedControl Dial with defects, Plaintiffs and other class members each were injured and suffered economic damages (including but not limited to, alternatively, the purchase prices of the SpeedControl Dial, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a suitable substitute) and consequential economic damages in that the SpeedControl Dial were so inherently flawed, defective, unfit, or unmerchantable has to have had no market value or substantially less market value. Plaintiffs and other class members suffered injury and damage arising from a reasonably anticipated use of the SpeedControl Dial. Alternatively and/or in addition to economic damages, Plaintiffs and other class members also have been injured and sustained pain, suffering, impairment, loss of enjoyment of life, and other related noneconomic damages as a direct and proximate result of each Defendant's breach of obligations concerning the unreasonably dangerous characteristics of the SpeedControl Dial.

**Count V – Manufacturing Defect/Mismanufacture (Against Permobil and Max Mobility)**

157. Plaintiffs incorporate by reference herein the ensuing paragraphs.

158. Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

159. Permobil and Max Mobility designed, manufactured, tested, marketed, sold, and distributed the SpeedControl Dial purchased by Plaintiffs and other class members. These acts were under the ultimate control and supervision of Permobil and Max Mobility.

160. Permobil's and Max Mobility's SpeedControl Dial was unreasonably dangerous in manufacture, construction, or composition for reasonably anticipated use by consumers, including

Plaintiffs and other class members.

161. Permobil's and Max Mobility's SpeedControl Dial wase defective in manufacture, construction or composition in that, when placed into the stream of commerce by Permobil and Max Mobility, they foreseeable risks exceeded the alleged benefits associated with the construction or composition.

162. The SpeedControl Dial was expected to and did reach Plaintiffs and other class members without substantial change in their condition as manufactured, designed, handled, distributed, and sold by Permobil and Max Mobility.

163. The SpeedControl Dial was defective in manufacture, construction, or composition in that Permobil and Max Mobility materially deviated from their manufacturing specifications, performance standards, testing, or quality assurance such that the manufacture or design posed an unreasonable risk of harm to Plaintiffs and other class members.

164. Permobil and Max Mobility knew, and certainly should have known, that their SpeedControl Dial was defective, inherently flawed, inherently dangerous, and unsafe when used in the manner intended or instructed by Permobil and Max Mobility.

165. Permobil and Max Mobility knew, and certainly should have known, that the defective manufacture, construction, or compositions of the SpeedControl Dial could result in physical and other injuries.

166. Permobil and Max Mobility did not conduct adequate post-marketing surveillance of the Speed Dials.

167. Permobil and Max Mobility could have employed safer and/or more appropriate steps in the manufacture of the SpeedControl Dial, which were feasible. For instance, Permobil and Max Mobility failed to adequately inspect/test the Speed Dials and their construction and

composition, including components, during the manufacturing process; failed to implement procedures that would reduce or eliminate the defect; and failed to use components and methods that would not contribute to or cause the defects.

168.    At the time each SpeedControl Dial left Permobil's and Max Mobility's control, including those purchased by Plaintiffs and other class members, each product deviated in a material way from the manufacturing specifications and performance standards.

169.    For instance, per their own standardized user manual which "must be given to the user of this product," Permobil's and Max Mobility's  manufacturing and performance standards for the SpeedControl Dials purchased by each Plaintiff and other class member were supposed to ensure that each particular SpeedControl Dial "can be used to deactivate the motor [in the SmartDrive], as well as provide a means of actively powering the motor [in the SmartDrive]."

170.    To ensure each SpeedControl Dial purchased by each Plaintiff and other class member could be used in this represented manner, Permobil and Max Mobility had an obligation to ensure in their manufacturing process that the printed circuit board assembly was manufactured to ensure that the joints were properly spaced and soldered, and the assembly itself made from sufficiently reliable material to avoid cracks (and/or were padded to prevent cracks), as improper spacing, soldering, and material composition could result and did result in intermittent electrical connections leading to the performance defects experienced by Plaintiffs and other class members and as alleged herein.

171.    Permobil and Max Mobility could have feasibly manufactured the SpeedControl Dial circuit board assembly to ensure solder joints on the assembly were made with sufficient solder material heated at a sufficient temperature to ensure the joints were not too thin or underheated. Absent sufficient solder material or soldering temperature, the joints could result and

36

did result in weak electrical connection. The joints also were prone to and did crack, resulting in an interruption of electric signal.

172. In addition, Permobil and Max Mobility could have feasibly manufactured the SpeedControl Dial with appropriate potentiometers, used in collaboration with appropriate firmware/software or even analog logic, to ensure the SpeedControl Dial's operability remained within specifications over time. They also could have feasibly selected appropriate materials for the environmental seals to avoid fretting, which will cause electrical signals to fluctuate and, in turn, result in malfunction.

173. Additionally, Permobil and Max Mobility could have feasible designed the SpeedControl Dial circuit board assembly to ensure the board itself did not become stressed or cracked, such as by increasing thickness or density of the board and/or by adding lifting pads to minimize the impact of physical stress on the board.

174. Permobil and Max Mobility could have feasibly designed the assembly to ensure components were not too close together, to avoid the components from creating a short circuit or intermittent electrical concern.

175. Two other very high percentage failure modes variable control systems such as the SpeedControl Dial are the quality and specifications of the potentiometer and the ruggedness of the connectors.

176. Potentiometers for this application can range from a few dollars to thousands of dollars and the quality and performance specifications are commensurate with those costs. The quality of the fixed element and the number of moveable wipers will determine the fidelity of the linearity and the ability to remain within specification over time and wear. The firmware/software, or even analog logic is designed and tuned to new part specifications. As the wearable components

37

work over time, those original specifications may well be out of tolerance for the system functionality. This phenomena develops over time and causes intermittent performance and malfunction. Additionally, the sanctity of the environmental seals vary widely. If discretionary diligence is not accounted for in the component selection, an inferior seal may be put into service in a high contamination environment. This is a typical defect caused by a poor component selection, and could have been avoided here.

177.    Mechanical mobile applications also suffer from varying and dynamic vibrations. If the environmental seals are deficient or if the electromechanical contacts are not robust, fretting will occur. The fretting will cause the electrical signals to fluctuate with respect to voltage and can introduce unwanted frequencies. This inappropriate component selection is also a defect that will cause machine performance degradation and uncommanded deviations, and could have been avoided here.

178.    Permobil and Max Mobility Defendant failed to develop, conduct, control, and monitor production processes to ensure good workmanship and to ensure the product conformed to specifications. This includes, but is by no means limited to, failure to adopt standard operating procedures, monitoring, compliance with standards and codes, good workmanship, and testing. Inspection and testing would have revealed this very basic problem concerning the intermittent electrical concern and circuit board assembly. These defects in manufacturing procedures allowed the basic defects which proximately caused the injuries alleged herein.

179.    Permobil's and Max Mobility's quality control, investigative, and monitoring practices also highlight the defective manufacture. Permobil and Max Mobility received numerous complaints about the defective SpeedControl Dial and declined to properly investigate and submit them to the FDA, as required by current Good Manufacturing Practices ("cGMP") regulations

including but not necessarily limited to 21 C.F.R. §§ 803.1, 803.10(c), 803.50, 803.52, 803.53, 803.56, 814.3a(d), 814.80, 814.81, 814.82, 814.84 as well as 21 U.S.C. § 360i (Medical Device Amendment to the Food, Drug & Cosmetic Act).

180.    Furthermore, Permobil and Max Mobility failed to report adverse event reports within 30 days, *see* 21 C.F.R. § 803.10(c)(1), or those for which remedial action was required within five days, *see* 21 C.F.R. § 803.10(c)(2). Moreover, Permobil and Max Mobility, due to inadequate procedures and willful desire to avoid reporting adverse consequences, failed to designate serious events for timely remediation.

181.    Permobil's and Max Mobility's actions also fell below the floor established by the FDA. However, the state of Louisiana and other states' laws impose identical, non-conflicting obligations and requirements on Permobil and Max Mobility to properly design, manufacture, test, monitor, and report adverse events. These parallel state law obligations were breached by Permobil's and Max Mobility's defective manufacture of the SpeedControl Dial for the reasons alleged above.

182.    Plaintiffs reference federal law herein not in any attempt to enforce it, but to demonstrate that their state-law tort claims do not impose any additional obligations on any Defendant, beyond what was already required of them under federal law.

183.    On information and belief, Permobil and Max Mobility never sought nor received premarket approval from the FDA for either the SmartDrive or the SpeedControl Dial.

184.    The likelihood that Permobil's and Max Mobility's mismanufacture would cause Plaintiffs' and other class members' injuries and damages and the gravity of those injuries and damages outweighed the burden on Permobil and Max Mobility to adopt the feasible alternative design or manufacture and the adverse effect, if any, of such alternative design or manufacture on

39

the utility of the SpeedControl Dial. This is because the cost and burden of the alternative design or manufacture were minimal to zero, and would largely diminish or extinguish the unreasonable risk of the defective manufacture.

185.    Given the nature of the defective manufacture of the SpeedControl Dial, it was likely and reasonably anticipated that the SpeedControl Dial would cause damages to Plaintiffs and other class members and the gravity of such damages outweighed the burden of adopting an alternative and/or appropriate manufacture.

186.    Plaintiffs and other class members used the SpeedControl Dial in an intended or reasonably foreseeable manner without knowledge of the dangerous characteristics.

187.    The SpeedControl Dial was more dangerous than alternative products, and Permobil and Max Mobility could have manufactured the SpeedControl Dial to avoid harm to Plaintiffs and other class members. The state of industry knowledge at the time Permobil and Max Mobility designed the Speed Dials was such that a less risky design and manufacture was feasible.

188.    Permobil's and Max Mobility's the SpeedControl Dial was defective in manufacture, construction, or composition in that, when placed into the stream of commerce by Permobil and Max Mobility, they foreseeable risks exceeded the alleged benefits.

189.    Permobil and Max Mobility intentionally and recklessly defectively manufactured the SpeedControl Dial with wanton and willful disregard for the rights and safety of Plaintiffs and other class members, and with malice, placing their economic interests above the rights and safety of Plaintiffs and other class members.

190.    The defective manufacture of the SpeedControl Dial was a substantial factor in injuries sustained by Plaintiffs and other class members.

191.    The defective manufacture of the SpeedControl Dial caused or contributed to

Plaintiffs' and other class members' injuries.

192.    As a direct and proximate results of each Defendant's sale of the SpeedControl Dial with defects, Plaintiffs and other class members each were injured and suffered economic damages (including but not limited to, alternatively, the purchase prices of the SpeedControl Dial, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a suitable substitute) and consequential economic damages in that the Speed Dials were so inherently flawed, defective, unfit, or unmerchantable has to have had no market value or substantially less market value. Plaintiffs and other class members suffered injury and damage arising from a reasonably anticipated use of the SpeedControl Dial. Alternatively and/or in addition to economic damages, Plaintiffs and other class members also have been injured and sustained pain, suffering, impairment, loss of enjoyment of life, and other related noneconomic damages as a direct and proximate result of each Defendant's breach of obligations concerning the unreasonably dangerous characteristics of the SpeedControl Dial.

**Count VI – Failure to Warn (Against Permobil and Max Mobility)**

193.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

194.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

195.    Permobil and Max Mobility designed, manufactured, tested, labeled, marketed, sold, and distributed the SpeedControl Dial purchased by Plaintiffs and other class members. These acts were under the ultimate control and supervision of Permobil and Max Mobility.

196.    Permobil's and Max Mobility's SpeedControl Dial was unreasonably dangerous because adequate warning about the product was not provided to Plaintiffs and other class members.

41

197. Permobil's and Max Mobility's SpeedControl Dial was unreasonably dangerous in design and manufacture as set forth *supra*. Permobil and Max Mobility, however, did not adequately warn purchasers or users, including Plaintiffs and other class members, about the design and manufacturing defects that rendered the product unreasonably dangerous.

198. An adequate warning by Permobil and Max Mobility would have included sufficient warning, explanation, or instruction that would lead an ordinary reasonable user of the SpeedControl Dial to contemplate the danger in using the product, and either decline to use the SpeedControl Dial or, if possible, to use the SpeedControl Dial in such a manner as to avoid risk, injury, or harm.

199. Permobil and Max Mobility did not provide such warnings. For instance, nowhere in Permobil's and Max Mobility's user manuals, brochures, labeling, packaging, promotional materials, or other representations did these Defendants disclose the unreasonable dangers posed by the SpeedControl Dial as set forth *supra*.

200. Had Permobil and Max Mobility adequately informed users, including Plaintiffs and other class members, of the unreasonable dangers and defects of the SpeedControl Dial, they and any other ordinary reasonable consumer would not have used or purchased the SpeedControl Dial, or alternatively would have used it in such a way to avoid if possible the unreasonable dangers that were not disclosed by Permobil and Max Mobility, such as the danger that the SpeedControl Dial will not be able to properly control the SmartDrive.

201. Because Permobil and Max Mobility never sought or obtained premarket approval for the SpeedControl Dial (or the SmartDrive), the FDA never evaluated Permobil's and Max Mobility's warnings or lack thereof, nor made any determination as to the safety of the SpeedControl Dial (or the SmartDrive).

202. Additionally, Permobil and Max Mobility failed to warn Plaintiffs and other class members about the unreasonably dangerous SpeedControl Dial by virtue of failing to properly comply with federal and state regulations for documentation and notification to the FDA of adverse events.

203. A manufacturer such as Permobil and Max Mobility have a duty to report adverse events in a timely manner to the FDA.

204. Permobil and Max Mobilitiy possessed or acquired knowledge of a characteristic of the SmartControl Dial and the danger or same after it left their control and that same may cause damage. Permobil and Max Mobility alternatively failed to acquire such knowledge about the dangerous characteristics of the SpeedControl Dial as a reasonably prudent manufacturer would.

205. Permobil's and Max Mobility's failed to use reasonable care to provide an adequate warning, both at time the SmartControl Dial left their control as well as thereafter, to Plaintiff and other class members. A reasonably prudent manufacturer would have known at the time of design, manufacture, and sale about the unreasonably dangerous defects in the SmartControl Dial.

206. Permobil and Max Mobility failed to use reasonable care to adequately document and report adverse events to the FDA.  Permobil's and Max Mobility's failures to do so foreseeably caused or contributed to the harm to Plaintiffs and other class members.

207. For example, Permobil and Max Mobility failed to report adverse event reports within 30 days, *see* 21 C.F.R. § 803.10(c)(1), or those for which remedial action was required within five days, *see* 21 C.F.R. § 803.10(c)(2). Moreover, Permobil and Max Mobility, due to inadequate procedures and willful desire to avoid reporting adverse consequences, failed to designate serious events for timely remediation.

208. Permobil's and Max Mobility's actions also fell below the floor established by the

43

FDA. However, the state of Louisiana and other states' laws impose identical, non-conflicting obligations and requirements on Permobil and Max Mobility to properly design, manufacture, test, monitor, warn, and report adverse events. These parallel state law obligations were breached by Permobil's and Max Mobility's actions.

209. Plaintiffs reference federal law herein not in any attempt to enforce it, but to demonstrate that their state-law tort claims do not impose any additional obligations on any Defendant, beyond what was already required of them under federal law.

210. On information and belief, Permobil and Max Mobility never sought nor received premarket approval from the FDA for either the SmartDrive or the SpeedControl Dial.

211. Given the nature of the defective SpeedControl Dial and inadequate warnings about same, it was likely and reasonably anticipated that the SpeedControl Dial would cause damages to Plaintiffs and other class members and the gravity of such damages outweighed the burden of adopting an alternative and/or appropriate warnings, design, or manufacture.

212. Plaintiffs and other class members used the SpeedControl Dial in an intended or reasonably foreseeable manner without knowledge of the dangerous characteristics.

213. The SpeedControl Dial was more dangerous than alternative products, and Permobil and Max Mobility could have manufactured, designed, or warned about the SpeedControl Dial to avoid harm to Plaintiffs and other class members. The state of industry knowledge at the time Permobil and Max Mobility designed, manufactured, and labeled the Speed Dials was such that a less risky design and manufacture was feasible.

214. Permobil's and Max Mobility's SpeedControl Dial was defective in design, warning, manufacture, construction, or composition in that, when placed into the stream of commerce by Permobil and Max Mobility, they foreseeable risks exceeded the alleged benefits.

215.    Permobil and Max Mobility intentionally and recklessly defectively manufactured and inadequately labeled the SpeedControl Dial with wanton and willful disregard for the rights and safety of Plaintiffs and other class members, and with malice, placing their economic interests above the rights and safety of Plaintiffs and other class members.

216.    The inadequate warning accompanying the SpeedControl Dial was a substantial factor in injuries sustained by Plaintiffs and other class members.

217.    As a direct and proximate results of each Defendant's sale of the SpeedControl Dial with defects, Plaintiffs and other class members each were injured and suffered economic damages (including but not limited to, alternatively, the purchase prices of the SpeedControl Dial, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a suitable substitute) and consequential economic damages in that the Speed Dials were so inherently flawed, defective, unfit, or unmerchantable has to have had no market value or substantially less market value. Plaintiffs and other class members suffered injury and damage arising from a reasonably anticipated use of the SpeedControl Dial. Alternatively and/or in addition to economic damages, Plaintiffs and other class members also have been injured and sustained pain, suffering, impairment, loss of enjoyment of life, and other related noneconomic damages as a direct and proximate result of each Defendant's breach of obligations concerning the unreasonably dangerous characteristics of the SpeedControl Dial.

**Count VII – Fraudulent Concealment/Inducement (Against NuMotion)**

218.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

219.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

220.    NuMotion affirmatively misrepresented material facts about the SpeedControl

Dial, including but not limited to whether they were safe, useful, convenient, properly manufactured and designed, and did not contain any undisclosed risks or defects.

221.    NuMotion omitted material facts about the true safety, usefulness, manufacture, and design of the SpeedControl Dial, and about risks associated with same.

222.    NuMotion made these misrepresentations, or omitted material information, in its marketing (including its website) and other materials for or accompanying the SpeedControl Dial.

223.    NuMotion's conduct induced customers to purchase or use the SpeedControl Dial, which NuMotion knew or should have known possessed undisclosed risks or defects. Plaintiffs and other class members would not have purchased the SpeedControl Dial (or alternatively would not have purchased them on the same terms, including purchasing them for substantially less) had they known the truth.

224.    NuMotion intentionally and recklessly misrepresented or omitted the true characteristics of the SpeedControl Dial. Prior information in the art, as well as knowledge within NuMotion's possession or control, put NuMotion on actual or constructive notice about their misrepresentations or omissions.

225.    NuMotion knew or reasonably should have known its misrepresentations or omissions were materially false or misleading or rendered its representations materially false or misleading.

226.    NuMotion knew or should have known that its misrepresentations and omissions would induce Plaintiffs and other class members to purchase the SpeedControl Dial. To the extent applicable NuMotion intended its misrepresentations and omissions to induce Plaintiffs and other class members to purchase the SpeedControl Dial.

227.    NuMotion's conduct alleged herein demonstrates its intent to deceive Plaintiffs and

46

other class members. NuMotion, inter alia, intentionally omitted material facts and made affirmative misrepresentations described herein about the SpeedControl Dial. which it knew were false or inaccurate. The totality of the circumstances plausibly demonstrates NuMotion's knowledge or intentionality.

228.   Each Plaintiff and other class member formed a contract with NuMotion at the time they purchased the SpeedControl Dial. The terms of the contract included the promises and affirmations of fact made by NuMotion on its website and in its written materials concerning the SpeedControl Dial including the Speed Dials would be of the quality and character as represented including but not limited to statements about the safety, efficacy, and defect-free nature of the SpeedControl Dial, and the lack of disclosure about undisclosed risks or defects. NuMotion's affirmations in its marketing and sales materials constitute statements that became part of the basis for the bargain, and are part of the standardized expectation between Plaintiffs and other class members and NuMotion.

229.   NuMotion's misrepresentations and omissions were material. NuMotion promised a safe, effective, and defect-free product, but the SpeedControl Dial was not as promised because the actual safety and efficacy profile was not the same as that represented and bargained for.

230.   NuMotion actively concealed its misrepresentations and omissions from Plaintiffs and other class members.

231.   To the extent applicable, Plaintiffs and other class members were reasonably justified in relying on NuMotion's misrepresentations and omissions. The same or substantively identical misrepresentations and omissions were communicated to each Plaintiff and other class member at time of purchase through NuMotion's marketing and sales materials. To the extent applicable, reliance may be presumed in these circumstances.

47

232.    As a direct and proximate results of each NuMotion's sale of the SpeedControl Dial with unbargained for defects, Plaintiffs and other class members each were injured and suffered economic damages (including but not limited to, alternatively, the purchase prices of the Speed Dials, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a substitute) and consequential economic damages in that the SpeedControl Dial was so inherently flawed, defective, unfit, or unmerchantable as to have had no market value or substantially less market value. Plaintiffs and other class members suffered injury and damage arising from a reasonably anticipated use of the SpeedControl Dial.

233.    Alternatively, the source of Plaintiffs' and other class members' damage was not the SpeedControl Dial itself, but NuMotion's misrepresentations and omissions, not covered by or in alternative to redhibition.

**Count VIII – Unjust Enrichment (Against NuMotion)**

234.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

235.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

236.    NuMotion was unjustly enriched at the expense of Plaintiffs and other class members by virtue of their purchasing the SpeedControl Dial from NuMotion. Plaintiffs and other class members conferred a direct benefit on NuMotion by purchasing the SpeedControl Dial directly from NuMotion and paying NuMotion directly and/or being the purchasing party that triggered third-party payments to NuMotion for the SpeedControl Dial.

237.    NuMotion profited immensely from selling the SpeedControl Dial that carried undisclosed risks and defects.

238.    Plaintiffs and other class members were unjustly deprived of money obtained by NuMotion as result of the improper amounts paid to NuMotion for the SpeedControl Dial. It would be inequitable and unconscionable for NuMotion to retain the profit, benefit, and other value obtained from Plaintiffs and other class members as a result of NuMotion wrongful conducted alleged.

239.    In the alternative to the other causes of action alleged herein, Plaintiffs and other class members have no adequate remedy at law.

240.    Plaintiffs and other class members are entitled to seek and do seek restitution from NuMotion as well as disgorgement of all profits, benefits, and other value obtained by NuMotion by virtue of its wrongful conduct.

241.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

**Count IX – Consumer Protection Statute Violation (Against NuMotion)**

242.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

243.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. § 51:1401 *et seq.*, and all states' consumer protection laws that do not conflict with Louisiana law.

244.    Each Plaintiff and other class member is a consumer or person aggrieved by NuMotion's conduct within the meaning of LUTPA or other non-conflicting state statutes.

245.    NuMotion's conduct as alleged herein constitutes unfair, deceptive, misleading, or otherwise actionable practices as to NuMotion's conduct concerning the characteristics of the SpeedControl Dial. NuMotion promised a safe and effective product, but the SpeedControl Dial was not as promised because the actual safety and use profile was not the same as represented or

bargained for.

246. To the extent applicable, NuMotion knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of NuMotion's unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and other Class Members have suffered damages- an ascertainable loss - in an amount to be proved at trial.

247. NuMotion engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the SpeedControl Dial in the course of NuMotion's business. Specifically, NuMotion represented that the SpeedControl Dial was safe, useful, properly designed, properly manufactured, and did not carry any undisclosed risks or redhibitory defects. But this was not the case. NuMotion made these misrepresentations, or omitted material information, in its marketing materials including but not limited to its website and in its sales materials.

248. The existence of the true nature and characteristics of the SpeedControl Dial would have been material to Plaintiffs and other class members.

249. Plaintiffs and other class members suffered ascertainable loss and actual damages as a direct and proximate result of NuMotion's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiffs and other class members would not have purchased the SpeedControl Dial, or not have purchased on the same terms (e.g., purchased them for substantially less), had they known the truth.

250. To the extent applicable, pre-suit notice and/or a demand letter was sent to NuMotion prior to the filing of the complaint.

251. As a direct and proximate results of each NuMotion's sale of the SpeedControl Dial

with unbargained for defects, Plaintiffs and other class members each were injured and suffered economic damages (including but not limited to, alternatively, the purchase prices of the Speed Dials, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a substitute) and consequential economic damages in that the SpeedControl Dial was so inherently flawed, defective, unfit, or unmerchantable as to have had no market value or substantially less market value. Plaintiffs and other class members suffered injury and damage arising from a reasonably anticipated use of the SpeedControl Dial.

**Count X – Negligence (Against NuMotion)**

252.    Plaintiffs incorporate by reference herein the ensuing paragraphs.

253.    Plaintiffs assert this claim on behalf of themselves and all similarly situated class members under Louisiana law and all states' laws that do not conflict with Louisiana law.

254.    NuMotion owed a duty to Plaintiffs and other class members to ensure the SpeedControl Dial  was safe, useful, properly designed, properly manufactured, defect-free, and did not carry any undisclosed risks.

255.    NuMotion owed a duty to Plaintiffs and other class members because the latter were foreseeable, reasonable, and probable users of the SpeedControl Dial, victims of NuMotion's deceptive and wrongful conduct. NuMotion knew, or should have known, that the SpeedControl Dial were not safe, useful, properly designed, properly manufactured, and defect-free. NuMotion knew, or should have known, that the SpeedControl Dial contained undisclosed risks or redhibitory defects.

256.    NuMotion exercised inadequate oversight over its sourcing of the SpeedControl Dial, resulting in same being sold to purchasers without disclosure of the true character of the

51

products.

257.    NuMotion maintained, or should have maintained, a special relationship with each Plaintiff and other class member, who were anticipated or intended direct beneficiaries and intended third-party beneficiaries, as NuMotion was obligated to ensure the SpeedControl Dial was safe, useful, properly designed, properly manufactured, defect-free, and did not carry any undisclosed risks.

258.    NuMotion's own actions and inactions created a foreseeable risk of harm to Plaintiffs and other class members.

259.    NuMotion breached duties owed to Plaintiffs and other class members by failing to exercise reasonable care sufficient to protect the interests and to meet the needs of Plaintiffs and other class members.

260.    As a direct and proximate results of each NuMotion's sale of the SpeedControl Dial with unbargained for defects, Plaintiffs and other class members each were injured and suffered economic damages (including but not limited to, alternatively, the purchase prices of the Speed Dials, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a substitute) and consequential economic damages in that the SpeedControl Dial was so inherently flawed, defective, unfit, or unmerchantable as to have had no market value or substantially less market value. Plaintiffs and other class members suffered injury and damage arising from a reasonably anticipated use of the SpeedControl Dial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following judgment:

A.    An order certifying this action as a class action;

B.      An order appointing Plaintiffs as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Class;

C.      A declaration that each Defendant is liable pursuant to each and every one of the above-enumerated causes of action;

D.      An order awarding appropriate preliminary and/or final injunctive relief against the conduct of each Defendant described herein;

E.      Payment to Plaintiffs and class members of all damages, exemplary damages, statutory damages, consequential damages, punitive damages, restitution and/or disgorgement associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the economic damages for the purchase prices of the SpeedControl Dial, the cost to replace the SpeedControl Dial, the cost to repair the SpeedControl Dial, the difference in cost between the SpeedControl Dial and a substitute, the difference in value of the SpeedControl Dial as-represented and as tendered, and as applicable damages for certain causes of action for pain, suffering, impairment, loss of enjoyment of life, and other related noneconomic damages;

F.      An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

G.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

H.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

53

Dated: October 3, 2025

Respectfully Submitted,

**BIZER & DeREUS, LLC**
*Attorneys for Plaintiff*

/s/ Andrew D. Bizer
ANDREW D. BIZER (LA # 30396)
GARRET S. DeREUS (LA # 35105)
EVA M. KALIKOFF (LA # 39932)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email: andrew@bizerlaw.com
        gdereus@bizerlaw.com
        eva@bizerlaw.com

**And**

Ruben Honik,
David J. Stanoch, Of Counsel
*to seek admission Pro Hac Vice*
Honik LLC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: 267-435-1300
ruben@honiklaw.com
david@honiklaw.com